**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **METROPCS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-CV-1946-L-BK** |
| | § | |
| **KALEEM MOHAMMED, et al.,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Order of Reference*, Doc. 25, this case has been referred to the magistrate judge for a recommended disposition of Plaintiff's *Motion for Default Final Judgment and Permanent Injunction*. Doc. 24. For the reasons that follow, it is recommended that the motion be **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff MetroPCS alleges that Defendants Kaleem Mohammed and Amer Ahmed illegally traffic in and resell wireless MetroPCS Handsets ("Handsets"). Doc. 6 at 1. According to Plaintiff's *Amended Complaint,* after illicitly obtaining Handsets from third parties, Defendants and/or their co-conspirators "unlock" them, thereby untethering the Handsets from the MetroPCS network and enabling their resale and use on other domestic or foreign telecommunications networks. Doc. 6 at 2-4. As a result, Plaintiff is unable to recoup its investment in each trafficked Handset or the revenue it otherwise would have received had each phone been operated under a MetroPCS service plan, resulting in an average loss of $679 per Handset. Doc. 6 at 4-5.

Plaintiff further alleges that Defendants' actions (1) prevent Plaintiff from recouping its investment in the Handsets; (2) cause shortages of available Handsets, thereby impairing

Plaintiff's relations with customers, retailers, and dealers; and (3) damage Plaintiff's reputation by causing confusion between the illicitly trafficked Handsets and genuine MetroPCS Handsets. Doc. 6 at 12-13.

In its *Amended Complaint for Damages and Injunctive Relief*, Plaintiff asserts claims of unfair competition, tortious interference with business relations, tortious interference with contractual relations, conspiracy to commit fraud and fraudulent misrepresentation; unjust enrichment; common law fraud and fraudulent misrepresentation; violations of the Computer Fraud and Abuse Act ("CFAA"); violations of the Lanham Act; and conversion. Doc. 6. Although summonses were served on Defendants, Doc. 15; Doc. 16, they neither answered nor otherwise responded to Plaintiff's *Amended Complaint*. Thus, at Plaintiff's request, Doc. 19; Doc. 20, the Clerk of Court entered default against Defendants. Doc. 18; Doc. 20. Plaintiff now moves for default judgment on all thirteen of its alleged claims, and seeks damages, injunctive relief, attorneys' fees, and costs. Doc. 24.

## II. LEGAL STANDARD

Conditions governing the entry of default and default judgment are set forth in Rule 55 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 55. The entry of a default judgment is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise timely respond to the complaint; (2) entry of default by the clerk of court when such default is established by affidavit or otherwise; and (3) application by plaintiff to the Court for a default judgment after the entry of default. *Id.* Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment, as the decision rests squarely within the district court's discretion. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) ("[D]efault

judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.") (citation omitted).

In determining whether a default judgment should be entered against a defendant, the court considers (1) whether the entry of default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) the relief, if any, to which the plaintiff is entitled. *United States v. 1998 Freightliner*, 548 F.Supp.2d 381, 384 (W.D. Tex. 2008). In determining whether default judgment is procedurally warranted, courts consider the factors set forth in *Lindsey v. Prive Corp.,* 161 F.3d 886 (5th Cir.1998), which instructs courts to consider whether (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) a default judgment would be unduly harsh; and (6) the court would think itself obliged to set aside default on the defendant's motion. *Id.* at 893.

A defaulting defendant is deemed to admit all well-pleaded facts in the plaintiff's complaint, but not facts that are not well-pleaded or conclusions of law. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Typically, damages are not awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir.1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame,* 6 F.3d 307, 310 (5th Cir.1993).

## III. ANALYSIS

**A.**     <u>**Default is procedurally warranted**</u>

On balance, the *Lindsey* factors weigh in favor of granting a default judgment in this case. First, given Defendants' non-responsiveness, no material facts are in dispute. *Lindsey,* 161 F.3d at 893. Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Gandy v. Lynx Credit*, No. 14-CV-0369-B, 2014 WL 6805501, at *2 (N.D. Tex. Dec. 3, 2014) (Boyle, J.) (citing *Lindsey,* 161 F.3d at 893). Third, Defendants were properly served and had nearly seven months to file an answer or explain their reticence to do so; thus, the grounds for default are clearly established. *Cf. Elite v. The KNR Group,* 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent a letter to the court explaining why he failed to appear). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a good faith mistake or excusable neglect. Fifth, Plaintiff only seeks the relief to which it is entitled under the Lanham Act and the CFAA, mitigating the harshness of a default judgment. *Cf. Henson v. Young 3, LLC*, No. 14-CV-905-B, 2015 WL 356890, at *2 (N.D. Tex. Jan. 28, 2015) (Boyle, J.) (holding that the harshness of a default judgment was mitigated by plaintiff only seeking the relief she was entitled under the FSLA). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. Thus, default judgment is procedurally warranted.

**B.**     <u>**There is sufficient basis for judgment in the pleadings**</u>

Plaintiff's well-pleaded allegations support the entry of a default judgement against Defendants for each of the thirteen separate causes of action alleged, as well as for injunctive relief, and attorneys' fees and costs.

### i. Tortious Interference with Business Relations

Tortious interference with business relations encompasses tortious interference with *existing* contracts and with *prospective* contracts. *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 09-CV-0419-D, 2009 WL 4016117, at *2 (N.D. Tex. Nov. 20, 2009) (Fitzwater, J.) (internal citation omitted). Here, Plaintiff alleges both occurred. *See* Doc. 6 at 17 (accusing Defendants of interfering with Plaintiff's "current and prospective business relationships"). A claim for tortious interference with existing business relations is established by showing (1) the existence of a contract; (2) willful and intentional interference with that contract; (3) an injury proximately caused by that interference; and (4) actual damage or loss occurred. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (citations omitted). Similarly, to prove a claim for tortious interference with prospective business relations Plaintiff must establish:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted).

In its *Amended Complaint*, Plaintiff alleges that it had (1) an existing relationship with its authorized dealers/retailers and current customers, and (2) a prospective relationship with its authorized dealers/retailers and prospective customers, from which, there was a "high probability" Plaintiff would receive future economic benefit. Doc. 6 at 17. Defendants were aware of these relationships, and knew and intended that their independently tortious and unlawful conduct would interfere with them. Doc. 6 at 17-18. And by their illicit actions, Defendants' diverted a significant number of Handsets from Plaintiff's current and prospective

dealers/retailers and customers, causing shortages and harming Plaintiff's business relationships. Doc. 6 at 17-18. The foregoing facts are sufficient to establish tortious interference with business relations; therefore, Plaintiff is entitled to default judgment on this claim.

### ii. Tortious Interference with Contractual Relations

To prevail on a claim for tortious interference with contractual relations, a plaintiff must show: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Plaintiff sufficiently pleads that (1) it had an existing contract with authorized dealers and retailers of MetroPCS Handsets; (2) Defendants were aware of this contractual relationship, yet knowingly and purposefully induced dealers and retailers to breach their agreements with Plaintiff; and (3) Defendants' conduct caused and continues to cause financial loss to Plaintiff by providing the dealers and retailers with Handsets to be activated on networks other than Plaintiff's. Doc. 6 at 18-19. Accordingly, Plaintiff's well-pled allegations support default judgment on this claim.

### iii. Fraud and Fraudulent Misrepresentation

Under Texas law, a successful claim for fraud requires proof that: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) the defendant knew that the representation was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter,* 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life*

*Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  Here, Plaintiff has sufficiently pleaded support for each element of fraud.

Plaintiff alleges that Defendants made several misrepresentations regarding the intended purpose and use of the MetroPCS Handsets they obtained, falsely stating the Handsets would be used for legitimate purposes by Defendants or other legitimate MetroPCS customers.  Doc. 6 at 21.  Plaintiff further alleges that Defendants never intended to activate the Handsets for use on Plaintiff's network or comply with the applicable terms and conditions for purchase and use, despite the fact that they knew they were obligated to do so.  Doc. 6 at 21.  Finally, Plaintiff alleges that Defendants intended for Plaintiff to rely on the misrepresentations, Plaintiff did so rely, and Plaintiff was, and continues to be, suffer harm financially and to its reputation as a result of its reliance on Defendants' misrepresentations.  Doc. 6 at 22.  Thus, Plaintiff is entitled to default judgment on this claim.

### iv. Conspiracy to Commit Fraud

To establish a conspiracy claim, Plaintiff must prove both civil conspiracy and underlying fraud or concealment.  *Leigh v. Danek Med., Inc.*, 28 F. Supp.2d 401, 405 (N.D. Tex. 1998) (McBryde, J.) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997)). "An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  The evidence must establish that there were: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."  *Id.*

Plaintiff alleges Defendants and their co-conspirators conspired, and did unlawfully purchase, traffic, and sell unlawfully unlocked Handsets bearing the MetroPCS Mark.  Doc. 6 at

19-20.  Plaintiff alleges this conduct violates federal trademark law, as well as other statutory and common law provisions specified in the *Amended Complaint*.  Doc. 6 at 19-20.  Plaintiff also alleges it has been harmed by Defendants' profiting from sales of the unlocked Handsets, while depriving Plaintiff of the earnings it anticipated from the use of the Handsets on the MetroPCS network. Doc. 6 at 19-20.

Having sufficiently pleaded facts supporting a claim for conspiracy to commit fraud, Plaintiff is entitled to default judgment on this claim.

### v. Unjust Enrichment

The theory of unjust enrichment permits recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Here, Plaintiff alleges Defendants knowingly led Plaintiff to believe that they were acquiring the Handsets for legitimate use on the MetroPCS network, despite the fact they had no intention of doing so.  Doc. 6 at 20.  As a result of this duplicity, Plaintiff states that Defendants have unjustly obtained benefits derived from their illegal resale of the Handsets.  Doc. 6 at 20.

Having sufficiently pleaded facts supporting a claim for unjust enrichment, Plaintiff is entitled to default judgment on this claim.

### vi. Computer Fraud and Abuse Act Claims

Plaintiff alleges three separate claims under the CFAA: Unauthorized Access with Intent to Defraud, Unauthorized Access, and Trafficking in Computer Passwords.  *See* Doc. 6 at 22-32.

*a. Unauthorized Access with Intent to Defraud*

To succeed on its Unauthorized Access with Intent to Defraud claim, Plaintiff must establish that Defendants knowingly and with intent to defraud, accessed a protected computer,[1] without authorization, and obtained anything of value -- unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000.00 in any one-year period. 18 U.S.C. § 1030(a)(4).

As alleged in the *Amended Complaint*, Defendants fraudulently acquired the Handsets in furtherance of their trafficking scheme. Doc. 6 at 30. The Handsets contain confidential codes/passwords permitting access to Plaintiff's telecommunication and billing networks (collectively "the protected network"). These networks are "protected computers," as defined in the CFAA. Doc. 6 at 30; *see T-Mobile USA, Inc. v. Terry*, 862 F.Supp.2d 1121, 1130 (W.D. Wash. 2012) (finding T-Mobile's telecommunications network and proprietary computer system for activation are each "protected computers" under the CFAA. Having acquiring the Handsets, Defendants use the codes/passwords contained therein to access the protected network. Doc. 6 at 30. However, Defendants' fraudulent acquisition of the Handsets voided the purchase agreement, rendering their access of the protected network unauthorized. Doc. 6 at 30. Upon accessing the protected network, Defendants were able to verify that the Handset was an active MetroPCS handset, and/or unlock the Handset. Doc. 6 at 30. Defendants could then sell the Handsets domestically and abroad -- effectively stealing Plaintiff's initial investment in each Handset. Doc. 6 at 30.

---

[1] A "protected computer" is a computer "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

Due to Defendants' unauthorized access, Plaintiff has spent well over $5,000.00 in a one-year period assessing the damage to or impairment of its protected network; taking measures to prevent future unauthorized use of the protected network; and identifying Defendants and/or the method by which they accessed the protected network. Doc. 6 at 31. In terms of damages, Defendants' actions have substantially impaired the integrity of Plaintiff's systems, deprived Plaintiff of the ability to control the quality of its products and services, and preventing Plaintiff from recouping its investment in the Handsets through the required network service. Doc. 6 at 31-32.

### b. Unauthorized Access & Trafficking in Computer Passwords

Similarly, to succeed on an Unauthorized Access claim, Plaintiff must establish that Defendants intentionally accessed a protected computer without authorization and caused damage[2] and loss[3]. 18 U.S.C. § 1030(a)(5)(C). As discussed above, Defendants have intentionally accessed Plaintiff's protected network without authorization. As a result, Plaintiff has been forced to take the aforementioned corrective measures, resulting in damage and loss. Lastly, to succeed on its Trafficking in Computer Passwords claim, Plaintiff must establish that Defendants knowingly trafficked in computer passwords in a manner that affects interstate commerce. 18 U.S.C. § 1030(a)(6). As stated herein, the Handsets fraudulently acquired and knowingly trafficked by Defendants contain passwords/codes that permit access to Plaintiff's

---

[2] "Loss" is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).
[3] "Damage" is "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8)

protected network.  Defendants subsequently sell the Handsets, including the codes/passwords contained therein, domestically and abroad.

Accordingly, Plaintiff is entitled to default judgment on its CFAA claims.

**vii. Trademark Claims**

Plaintiff asserts claims against the Defendants for federal trademark infringement, contributory trademark infringement, and false advertising.  Doc. 6 at 32-37; Doc. 24 at 5.

*a. Federal Trademark Infringement &*
*Contributory Trademark Infringement*

To establish a cause of action for trademark infringement, Plaintiff must show (1) it has a legally protectable mark; and (2) Defendants' use of that mark creates a "likelihood of confusion."  *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).  "To be protectable a mark must be distinctive, either inherently or by achieving second meaning in the mind of the public."  *Id.*  This liability can be extended "beyond those who actually mislabel goods with the mark of another."  *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 853 (1982).  In fact, "contributory trademark infringement has been extended [to situations] where the accused contributory infringer provides services rather than manufacturing goods."  *Eclipse Aesthetics L.L.C. v. Regenlab USA, L.L.C.*, No. 15-CV-3748-M, 2016 WL 4207993, at *3 (N.D. Tex. Aug. 10, 2016) (Lynn, J.) (citation omitted).

Here, Plaintiff has properly alleges (1) its legally protectable marks, namely the MetroPCS Marks, *see* Doc. 6 at 7-8; Doc. 6-2, which are inherently distinctive and associated in the mind of the public with Plaintiff; and (2) that Defendants' use of the Marks creates a likelihood of confusion in the minds of potential consumers, as the Handsets sold by Defendants are materially different from, and do not contain the warranties, manuals, or accessories that customarily accompany, genuine MetroPCS Handsets.  Doc. 6 at 32-34; *Am. Rice, Inc.*, 518 F.3d

at 329. Furthermore, Defendants' sale of these ill-gotten Handsets to downstream distributors enables those distributors to market the Handsets to the public in a manner that infringes on the Marks. Doc. 6 at 37; *Inwood Labs., Inc.*, 456 U.S. at 853 (stating that a distributor who "intentionally induces another to infringe a trademark . . . is contributorily responsible for any harm done as a result of the deceit."). Thus, Plaintiff is entitled to default judgment on its federal trademark infringement and contributory trademark infringement claims.

*b. False Advertising*

To state a claim for false advertising under the Lanham Act, Plaintiff must allege (1) Defendants made a false statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or has a tendency to deceive a substantial segment of the audience; (3) the deception is likely to influence the purchasing decision; (4) Defendants caused the false statement to enter interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result. *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citations omitted). Here, Plaintiff alleges that Defendants knowingly, willfully, and deceptively use a MetroPCS Mark in the sale of "unlocked, materially-different" Handsets in interstate commerce; that the use of this Mark causes customers to think Defendants are affiliated with or authorized by MetroPCS, thereby influencing purchasing decisions; and that Defendant's false advertising has damaged and will continue to damage Plaintiff's reputation. Doc. 6 at 34-36. Thus, Plaintiff is entitled to default judgment on its false advertising claim.

### viii. Common Law Unfair Competition

Unfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act. *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 235 n.7 (5th Cir. 2010). Therefore, to state a claim for unfair competition, Plaintiff must allege (1)

ownership in a legally protectable mark, and (2) likelihood of confusion between the marks. *Id.* at 235-36. As discussed *supra*, Plaintiff has made such a showing, and is therefore entitled to a default judgment on its unfair competition claim.

### ix. Conversion

Under Texas law, a plaintiff in an action for conversion must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). While Plaintiff alleges that it had the right to provide Handsets and wireless service to the public, and that Defendants wrongfully and intentionally exercised dominion over the Handsets to Plaintiff's exclusion, nothing in the *Amended Complaint* alleges that Plaintiff demanded their return and that Defendants refused. *See generally*, Doc. 6 at 37-38. However, this is not fatal, as demand and refusal is not required when conversion is "complete," and "the possessor's acts amount to a clear repudiation of the owner's rights." *Autry v. Dearman*, 933 S.W.2d 182, 191 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citations omitted). Plaintiff's factual allegations show that Defendants' illegal resale amounts to complete conversion of the Handsets, and a "complete repudiation" of Plaintiff's exclusive rights to sell the Handsets and provide wireless service. *Id.*

Accordingly, having sufficiently alleged conversion, Plaintiff is entitled to default judgment on this claim.

### IV. RELIEF REQUESTED

The relief requested in the complaint limits the relief available by default judgment. FED. R. CIV. P. 54(c) ("[A] default judgment must not differ in kind from, or exceed in amount, what

is demanded in the pleadings.").  Here, Plaintiff requests nothing more than what is demanded by its pleadings; accordingly, the Court is next called upon to "determine whether the relief requested is appropriate based on the governing law." *Chevron Intellectual Prop., L.L.C. v. Allen*, No. 08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.).

## A.    <u>Damages</u>

Under the Lanham Act, appropriate damages include "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  In its discretion, the court may also award up to three times the amount found as actual damages.  15 U.S.C. § 1117(a).  Plaintiff requests actual damages in the amount of $107,976, or treble damages in the amount of $323,883.00.  Doc. 24 at 27.  In support, Plaintiff submits the affidavit of its Vice President for Field Operations and Financial Control, John Neil, who avers that each Handsets unlawfully trafficked by Defendants resulted in a loss to Plaintiff of $679.  Doc. 24-3 at 5.  This average is computed by adding Plaintiff's average investment per Handset ($155.00) and the net expected revenue per Handset ($524.00).  Doc. 24-3 at 5.  However, Plaintiff is not entitled to recoup their initial investment from Defendants (which they would have expended regardless) – only the revenue they subsequently loss as a result of Defendants' actionable conduct ($524 per Handset).  Thus, based on Neil's affidavit, the unlawful trafficking of 159 Handsets resulted in damages of $83,316.  Doc. 24-3 at 5.

Under facts similar to this case, courts have found treble damages are warranted.  *See, e.g.*, *Sprint Commc'ns. Co. L.P. v. Chong*, No. 13-3846, 2014 WL 6611484, at *5 (S.D. N.Y Nov. 21, 2014) ("The submitted evidence and [defendant's] admissions upon default judgment show that Sprint is entitled to treble damages because [defendant] intentionally infringed Sprint's trademarks for his own profit.");  *MetroPCS v. Devor*, --- F.Supp.3d ---, 2016 WL 6133869, *6

(N.D. Ill. 2016) (finding trebling appropriate where "Defendants' willful violations of the Lanham Act, as well as their intentional absence from this case [made] it impossible for MetroPCS to quantify its true damages"). Likewise, on the basis of Defendants' willful infringement and failure to appear established in this case, Plaintiff should be awarded treble damages in the amount of $249,948.

## B. Investigative Costs

Plaintiff also seeks as damages an award of $4,803.22 – the cost it incurred investigating Defendants' unlawful actions in preparation for this lawsuit. Doc. 24 at 30. In support, Plaintiff offers the affidavit of Stuart Drobny, president of the investigative firm hired by Plaintiff, in which he details his qualifications, experience, and the investigation of Defendants. Doc. 24-2. In light of the evidence presented by Plaintiff, the fact that the Lanham Act permits recovery of the costs of the action, *see* 15 U.S.C. § 1117(a), and that pre-suit investigative costs have been routinely awarded in similar trademark cases,[4] the Court should grant Plaintiff's request and award $4,803.22 as its reasonable costs.

## C. Injunctive Relief

Plaintiff also seeks injunctive relief in conjunction with its Lanham Act and CFAA claims. Doc. 24 at 22. A permanent injunction is appropriate if a plaintiff can prove that: (1) it has suffered an irreparable injury; (2) no adequate remedy at law exists to compensate for that

---

[4] *See, e.g., Sprint Sols., Inc. v. Taylor*, No. 14-CV-4124-M-BF, 2016 WL 446669, at *4 (N.D. Tex. Jan. 8, 2016) (Stickney, J.), *adopted by* 2016 WL 427481 (Lynn, J.) (awarding $37,605.08 in investigative costs); *MetroPCS v. Fiesta Cell Phone*, No. 16-CV-3573, 2017 WL 958592, at *3 (S.D. Tex. Mar. 6, 2017) (awarding $7,267.15 in investigative costs); *Devor*, --- F.Supp.3d ---, 2016 WL 6133869, at *7 (awarding $5,432 in investigative costs); *Sprint Sols., Inc. v, Cell Wholesale, Inc.*, No. SACV 15-878-JLS (JCGx), 2016 WL 875384, at *5 (C.D. Cal. Mar. 7, 2016) (awarding $49,318.09 in investigative costs); *Sprint Commc'ns Co. L.P. v. Chong*, No. 13 Civ. 3846(RA), 2014 WL 6611484, at *9 (S.D. N.Y. Nov. 21, 2014) (awarding $13,033.18 in investigative costs).

injury; (3) the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

That Defendants' actions have interfered with Plaintiff's reputation, goodwill, and ability to control the quality of its products satisfies the first prong. *S & H Indus., Inc. v. Selander*, 932 F.Supp.2d 754, 765 (N.D. Tex. 2013) (Lynn, J.). The second prong is satisfied, as monetary damages will not prevent future infringing conduct on the part of Defendants, nor will it prevent Defendants from again violating the CFAA. *See id.* ("Plaintiff's loss of control [over its Mark] also demonstrates that money damages cannot adequately compensate Plaintiff for Defendant's unauthorized use of the Mark."); *Pham v. Jones*, No. 05-2027, 2006 WL 1342826, at *6 (S.D. Tex. May 13, 2006) ("Without a permanent injunction, [plaintiff] may have to file suit again should any infringement occur in the future."). Because any harm that befalls the Defendants by requiring them to comply with the law is outweighed by the substantial and continuing harm to Plaintiff's business, namely the continuing shortage of Handsets, the third prong is likewise satisfied. Finally, the strong public interest in "requiring continuing strict adherence to intellectual property laws" satisfies the fourth prong. *Arista Records, Inc. v. Kabani*, No. 03-CV-1191-H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004) (Sanders, J.); *see also Devor*, --- F.Supp.3d ---, 2016 WL 6133869, at *3 ("[T]he public has a strong interest in obtaining legitimate, fully-functioning MetroPCS Handsets for their telecommunications needs, as opposed to the hacked, unwarranted, and illicit Handsets being trafficked by Defendants.").

Accordingly, the entry of a permanent injunction against Defendants is appropriate.

**D.**     **Attorneys' Fees**

Lastly, Plaintiff seeks attorneys' fees in the amount of $7,685.37.[5] Doc. 24.  Under the Lanham Act, attorneys' fees and costs may be awarded to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).  The Court of Appeals for the Fifth Circuit has held that an exceptional case "is one in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) (citation and internal quotation marks omitted).  District Courts within the Fifth Circuit have held that defaulting defendants are deemed to have admitted they acted knowingly and intentionally.  *See, e.g.*, *Neutron Depot, LLC, v. Bankrate, Inc.*, No. 14-CV-192, 2016 WL 215544, at *4 (S.D. Tex. Jan. 19, 2016); *Sculpt Inc. v. Sculpt New York, L.L.C.*, No. H-14-3398, 2015 WL 6690224, at *5 (S.D. Tex. Nov. 3, 2015).  Thus, by virtue of their default and willful exploitation of Plaintiff and its Marks, Defendants are deemed to have acted knowingly and intentionally, *Neutron Depot*, 2016 WL 215544, at *4, therein justifying an award of their reasonable attorneys' fees and costs under the Lanham Act.  *Tex. Pig Stands, Inc.*, 951 F.2d at 697; 15 U.S.C. § 1117(a).

### i. The Lodestar

In adjudicating an award of attorneys' fees in the Fifth Circuit, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  The fee applicant bears the burden of proof on each issue.  *See Riley v. City of Jackson*, 99 F.3d 757, 760

---

[5] This fee total is a composite of the $6,248 Plaintiff incurred with Carlton Fields Jorden Burt, P.A. ("CFJB"), and the $1,416.37 Plaintiff incurred with local counsel at Gray Reed & McGraw, P.C ("Gray Reed").  Doc. 24-1 at 3-4.

(5th Cir. 1996); *La. Power & Light*, 50 F.3d at 324. Next, a court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[6] *Riley*, 99 F.3d at 760. "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). There is a strong presumption that the lodestar figure represents a reasonable fee. *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 541 (5th Cir. 1992).

### a. Reasonable Hourly Rates

In establishing reasonable hourly rates, the fee applicant typically submits "copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individual's litigation skills generally." *S & H Indus., Inc. v. Selander*, No. 11-CV-2988-M-BH, 2013 WL 6332993, at *2 (N.D. Tex. Dec. 5, 2013) (Lynn, J.) (citation omitted); s*ee also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there.").

In support, Plaintiff offers the affidavit of Stacey K. Sutton, an attorney at CFJB, who avers to the following hourly rates, which she asserts are reasonable and comparable to or less than the hourly rates charged by similar firms in Texas: $525 for Stacey Sutton (CFJB

---

[6] These factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the requisite skill to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

shareholder; 17 years of business litigation and trade regulation experience); $480 and $485, respectively, for Alana Zorrilla-Gaston and Kristin Gore (CFJB shareholders; 10 years of business litigation experience); $240 for Michelle DeLong (CFJB attorney); $230 for Christine Demaline (CFJB paralegal); and $350 for April Terry (Gray Reed attorney; 21 years of litigation experience). Doc. 24-1 at 3-4. Taking into account the discounted rate CFJB charged Plaintiff, this yields a blended hourly rate of $223.94 for all CFJB professionals. Doc. 24-1 at 3.

However, in arguing that the rates are reasonable, Plaintiff inappropriately relies on cases discussing rates outside of the Dallas metropolitan area. *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("Attorneys' fees are to be calculated at the prevailing market rates in the relevant community.") (citation and internal quotation marks omitted). Although the absence of affidavits from Dallas attorneys limits the Court's ability to determine the reasonableness of the rates, *Tollett*, 285 F.3d at 368, "it is well-established that the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services." *Areizaga v. ADW Corp.*, No. 14-CV-2899-B, 2016 WL 3406071, at *5 (N.D. Tex. June 21, 2016) (Horan, J.) (citations omitted). Based on the Court's familiarity with rates charged in similar cases by professionals with comparable experience, the Court finds reasonable the blended hourly rate of $223.94 for all CFJB professionals and the $350 hourly rate for Gray Reed attorney, April Terry.

*b. Reasonable Number of Hours*

In order to determine the reasonable number of hours expended in a case, the fee applicant must present adequately documented time records to the court. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Here, Plaintiff submitted billing records from CFJB and Gray Reed, which showed the firms billed 27.9 and 2.7 hours, respectively. Doc. 24-1 at 284-

290.  Upon review of the billing records, the Court finds the number of hours expended reasonable and necessary for the successful prosecution of this action.

Based on the foregoing, it is recommended that the Court award attorney fees in the total requested amount of $7,685.37.  Taking into account the presumed reasonableness of this lodestar award, *Welch*, 960 F.2d at 541, together with the *Johnson* factors, there is no reason to depart from this figure.

## V. CONCLUSION

In light of the foregoing, it is recommended that Plaintiff's *Motion for Default Final Judgment and Permanent Injunction*, Doc. 24, be **GRANTED** to the extent stated herein, and that upon acceptance of this recommendation, the Court enter Default Judgment in favor of Plaintiff.

**SO RECOMMENDED** on April 24, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE